FILED & JUDGMENT ENTERED
Steven T. Salata

December 10 2020

Clerk, U.S. Bankruptcy Court
Western District of North Carolina

*Laura T Beyer*
Laura T. Beyer
United States Bankruptcy Judge

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
### (Charlotte Division)

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| **MT SIMPSON FARM, LLC,** | ) | Case No. 20-30625 |
| | ) | |
| Debtor. | ) | |

## ORDER CONFIRMING CHAPTER 11 SUBCHAPTER V PLAN

This cause came before the Court on December 9, 2020 to consider confirmation of the *Plan of Reorganization* (the "Plan") [Doc. 34], filed by MT Simson Farm, LLC (the "Debtor"). Michael T. Bowers, Esq. appeared as the subchapter V trustee (the "Trustee"), Alexandria P. Kenny, Esq. appeared for the United States Bankruptcy Administrator for the Western District of North Carolina, Lance P. Martin, Esq. appeared for creditor James River Equipment, Inc. ("James River"), and Richard S. Wright, Esq. appeared as counsel for the Debtor. Based upon a review of the record, the evidence presented, and the arguments of counsel, the Court finds and concludes as follows:

1.      The Debtor timely transmitted the Plan and an appropriate ballot conforming to Official Form No. 314 to its creditors, equity security holders, and all other parties in interest. The confirmation hearing was held on due and proper notice to all interested parties.

2.      The Debtor and James River announced certain revisions to the treatment of James River's claims in Class 2 of the Plan, which do not adversely affect the treatment of any other creditors pursuant to the Plan.  Subject to said revisions, James River accepted the Plan as set forth in in its filed *Acceptance of Plan* [Doc. 46].

3.      The only other creditor to vote, Northland Capital Financial Services, LLC ("Northland"), whose secured claim is treated in Class 3, voted to reject the Plan.   However, Northland neither filed an objection to confirmation nor appeared at the hearing in this matter.

4.      All requirements for confirmation of the Plan set forth in 11 U.S.C. § 1129(a) have been satisfied, except for the unanimous acceptance by impaired creditors required by section 1129(a)(8).

5.      The Plan is nevertheless confirmable pursuant to 11 U.S.C. § 1191(b) because it does not discriminate unfairly and is fair and equitable with respect to each class of impaired creditors by providing that the Reorganized Debtor's disposable income will be distributed to make payments under the Plan for three years as required by 11 U.S.C. § 1991(c)(2).

6.      A copy of the Plan, with all modifications and/or revisions as announced at the hearing and approved by the Court, is attached hereto as <u>Exhibit A</u>.

7.      Confirmation of the Plan as set forth in <u>Exhibit A</u> is in the best interests of the Debtor, its estate, its creditors, and all other parties in interest.

**IT IS THEREFORE ORDERED, ADJUDGED and DECREED that:**

1.      The Plan, as attached hereto as <u>Exhibit A</u>, is confirmed;

2.      Any objections to confirmation of the Plan are overruled;

3.      As provided by Section 6.1 of the Plan and 11 U.S.C. § 1194(b), the Reorganized Debtor will be responsible for all distributions under the Plan and the Trustee's duties shall be terminated upon substantial confirmation of the Debtor's Plan;

4.      The findings and conclusions set forth in this Order are the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rules 7052 and 9014.  To the extent any findings of fact constitute conclusions of law, and *vice versa*, they are adopted as such; and

5.      The Court shall retain jurisdiction over any and all issues arising from or related to the implementation, interpretation, and enforcement of this Order and/or the Plan.

| This Order has been signed electronically. The Judge's signature and Court's seal appear at the top of this Order. | United States Bankruptcy Court |
| --- | --- |

# EXHIBIT A

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
(Charlotte Division)

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| **MT SIMPSON FARM, LLC,** | ) | Case No. 20-30625 |
| | ) | |
| | ) | |
| Debtor. | ) | |

## CONFIRMED PLAN OF REORGANIZATION

MT Simpson Farm, LLC, the Debtor, submits this Plan of Reorganization pursuant to Title 11 of the United States Code, 11 U.S.C. § 101 *et seq.*

## DISCLOSURES REQUIRED BY 11 U.S.C. § 1190

The Debtor owns farming equipment that it leases to a related entity, Simpson Family Farm. Simpson Family Farm's primary business function is the cultivation of row crops. Simpson Family Farm has been forced to scale back its farming operation in recent years for various reasons, including low crop prices and weather. While this cutback has made Simpson Family Farm more profitable, it no longer needs all the equipment it once leased from the Debtor. The Debtor has been forced to sell some of the equipment it owns because of Simpson Family Farm's reduced needs. The remaining equipment has become worth substantially less than the amounts owed on the underlying debt.

Through this Plan, the Debtor intends to restructure its debt based on the value of its creditors' collateral. As shown in the attached Liquidation Analysis, this Plan will result in payments to creditors in an amount greater than the same creditors would receive under Chapter 7 of the Bankruptcy Code. You should consult your attorney, accountant, or financial advisor if you have any questions about the Liquidation Analysis.

As shown in the included Financial Projections, the Debtor is able to make the required payments under the Plan via rental payments received from Simpson Family Farm. Simpson Family Farm will be able make the rental payments from ongoing farming revenue. To the extent requested, the Debtor will provide financial information related to Simpson Family Farm's ability to make the ongoing rental payments to the Debtor. You should consult your attorney, accountant, or financial advisor is you have any questions about the Financial Projections.

# ARTICLE I
## DEFINITIONS

As used in this chapter 11 plan, the following terms shall have the respective meanings specified below:

1.1 <u>Administrative Claim</u>. Any cost or expense of administration of the Chapter 11 Case (a) required to be asserted by filing an application with the Bankruptcy Court on or before the Administrative Bar Date, or (b) Allowed under section 503(b) of the Bankruptcy Code, except to the extent the holder of such Claim agrees to be treated differently. Administrative Claims include, but are not limited to, (i) any actual and necessary expenses of preserving the Estate incurred during the Chapter 11 Case, (ii) any actual and necessary expenses of operating the Debtor's business incurred during the Chapter 11 Case, (iii) any indebtedness or obligations incurred or assumed by the Debtor in connection with the conduct of its business as a debtor in possession, or for the acquisition or lease of property by, or for the rendition of services to, the Debtor as debtor in possession, (iv) obligations pursuant to executory contracts assumed by the Debtor pursuant to an order of the Bankruptcy Court, (v) all Claims as provided by section 507(b) of the Bankruptcy Code, (vi) all allowances of compensation or reimbursement of expenses to the extent allowed by the Bankruptcy Court, including any funds owed to the Trustee, (vii) any Allowed Contingent Claims which are granted administrative priority status by Final Order of the Bankruptcy Court, (viii) all fees payable and unpaid under section 1930 of Title 28, United States Code, and (ix) any fees or charges assessed against the Estate under chapter 123 of Title 28, United States Code.

1.2 <u>Administrative Claims Bar Date</u>. The date thirty (30) days after the Effective Date or such other date(s), if any, as determined by order of the Bankruptcy Court, by which all requests for allowance of Administrative Claims must be filed with the Bankruptcy Court. The Administrative Claims Bar Date shall not apply to fees and expenses of the Debtor's Professionals incurred after the Confirmation Date.

1.3 <u>Allowed Administrative Claim</u>. All or that portion of any Administrative Claim that is or has become an Allowed Claim.

1.4 <u>Allowed Claim</u>. Any Claim against the Debtor (i) proof of which was filed on or before the date designated by the Bankruptcy Court as the last date for filing proofs of claims against the Debtor or, if no proof of claim is filed, which has been or hereafter is listed by the Debtor in its Schedules, as liquidated in amount and not disputed or contingent and, in either case, a Claim as to which no objection to the allowance thereof has been interposed within the applicable period of limitation fixed by this Plan, the Bankruptcy Code, the Bankruptcy Rules, or the Bankruptcy Court, or (ii) in favor of any Person arising from a judgment against such Person in any Avoidance Action (if the effect of such judgment gives such Person an Allowed General Unsecured Claim), or (iii) any Claim as to which the Bankruptcy Court has entered a Final Order allowing the Claim. A Disputed Claim shall be an Allowed Claim if, and only to the extent that, a Final Order has been entered allowing such Disputed Claim. The term "Allowed," when used to modify a reference in this Plan to any Claim or class of Claims, shall mean a Claim (or any Claim in any such class) that is allowed (e.g., an Allowed Secured Claim is a Claim that has been Allowed to the extent of the value of any interest in property of the Estate securing such Claim),

as determined by the Bankruptcy Court pursuant to section 506(a) of the Bankruptcy Code. Unless otherwise specified in this Plan or in the Final Order of the Bankruptcy Court allowing such Claim, "Allowed Claim" shall not include interest on the amount of such Claim from and after the Petition Date.

1.5    <u>Assumed Agreement</u>.    The Debtor's unexpired leases and other executory contracts that are being assumed pursuant to the Plan.

1.6    <u>Avoidance Action</u>.  Any and all actions which a trustee, debtor in possession, or other appropriate party in interest may assert on behalf of the Estate under the Bankruptcy Code, including actions pursuant to sections 542, 543, 544, 545, 546, 547, 548, 549, 550, and/or 551 of the Bankruptcy Code.

1.7    <u>Avoidance Action Claims</u>.  Claims asserted by parties pursuant to sections 502(d) and/or 502(h) of the Bankruptcy Code in connection with any Avoidance Action(s) brought by the Debtor against such parties.

1.8    <u>Back Lease Payments</u>.  Payments to be made pursuant to this Plan by Simpson Family Farm to the Reorganized Debtor.  Said payments shall be in settlement of a receivable owed to the Debtor by Simpson Family Farm in the amount of $189,000.  The Back Lease Payments shall be made in annual installments with the first payment due on December 31, 2020.  The amounts of the Back Lease Payments shall be $5,000 for 2020 through 2024, $7,500 for 2025 through 2029, and $15,000 for 2030 through 2040.

1.9    <u>Ballot</u>.  The document used in voting on the Plan that must be executed and delivered by holders of Claims entitled to vote on the Plan.

1.10    <u>Bankruptcy Administrator</u>.  The United States Bankruptcy Administrator for the Western District of North Carolina.

1.11    <u>Bankruptcy Code</u>.  The Bankruptcy Reform Act of 1978, as amended, and memorialized in Title 11 of the United States Code, 11 U.S.C. § 101 *et seq.*

1.12    <u>Bankruptcy Court</u>.  The United States Bankruptcy Court for the Western District of North Carolina.

1.13    <u>Bankruptcy Rules</u>.  The Federal Rules of Bankruptcy Procedure and the local rules of the Bankruptcy Court, as applicable to the Chapter 11 Case.

1.14    <u>Business Day</u>.  Any day other than a Saturday, Sunday, or other day on which commercial banks in the State of North Carolina are authorized or required by law to close.

1.15    <u>Cash</u>.  Cash and readily marketable securities or instruments including, without limitation, readily marketable direct obligations of the United States of America or agencies or instrumentalities thereof, time certificates of deposit issued by any bank, and commercial paper.

1.16    Cause of Action.  Any right, claim, proof of claim, motion, objection, and/or other legal cause of action, including, but not limited to Avoidance Actions, which the Debtor and/or the Reorganized Debtor may pursue in any court of competent jurisdiction or other forum.

1.17    Chapter 11 Case.  The Chapter 11 bankruptcy case of MT Simpson Farm, LLC, (Case No. 20-30625), pending in the Bankruptcy Court.

1.18    Claim.  Any right to payment from the Estate or the Estate, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured, and arising at any time before the Effective Date or relating to any event that occurred before the Effective Date; or any right to an equitable remedy for breach of performance if such breach gives rise to a right of payment from the Estate or the Estate, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured, and arising at any time before the Effective Date or relating to any event that occurred before the Effective Date.

1.19    Class.  Means a classification of Allowed Claims for the purposes of treatment and distributions under this Plan.

1.20    Confirmation Date.  The date upon which the Bankruptcy Court enters the Confirmation Order confirming this Plan.

1.21    Confirmation Hearing.  The hearing before the Bankruptcy Court to consider confirmation of this Plan.

1.22    Confirmation Order.  An order of the Bankruptcy Court confirming this Plan in accordance with the provisions of Chapter 11 of the Bankruptcy Code.

1.23    Contingent Claim.  A Claim that is either contingent or unliquidated on or immediately before the Confirmation Date.

1.24    Creditor.  Any Person that holds a Claim against the Estate.

1.25    Debtor.  MT Simpson Farm, LLC

1.26    Disputed Claim.  A Claim which is the subject of a timely objection interposed by the Debtor, if at such time such objection remains unresolved; provided, however, that the Bankruptcy Court may determine the amount of a Disputed Claim for purposes of allowance pursuant to section 502(c) of the Bankruptcy Code; provided, further, that the Debtor, in its sole discretion, may elect to treat the portion of a Disputed Claim, if any, that is not in dispute as an Allowed Claim, with the disputed portion remaining a Disputed Claim.

1.27    Effective Date.  The Business Day on which all of the conditions set forth in Article 10 of this Plan shall have been satisfied or waived, but no later than December 1, 2020.

1.28    Equity Interest.  Any interest in the Debtor represented by any class or series of capital stock or membership interests of the Debtor prior to the Petition Date, and any and all

warrants, options, convertible, or exchangeable securities, subscriptions, rights (including any preemptive rights), appreciation rights, calls, or commitments of any character whatsoever relating to any such interest in the Debtor. Equity Interests also include, without limitation, all Claims arising from rescission of a purchase or sale of an Equity Interest, for damages arising from the purchase or sale of such an Equity Interest, or for reimbursement or contribution allowed under section 502 of the Bankruptcy Code on account of such a Claim.

1.29    Estate.  The bankruptcy estate of the Debtor, including all interests in property that the Debtor holds.

1.30    Final Order.  An order that is no longer subject to appeal, certiorari proceeding or other proceeding for review or rehearing, and as to which no appeal, certiorari proceeding, or other proceeding for review or rehearing shall then be pending.

1.31    Financial Projections.  The forecast in the appendix to the Plan that projects the Debtor's ability to make the payments required by the Plan.

1.32    General Unsecured Claim.  Any Unsecured Claim, other than an Administrative Claim, an Other Priority Claim, or a Priority Tax Claim.  Subject to the provisions of this Plan, Allowed General Unsecured Claims may include, without limitation, Allowed Unsecured Deficiency Claims, and any Claim in favor of any Person arising from a judgment against such Person in any Avoidance Action (if the effect of such judgment gives such Person an Allowed General Unsecured Claim).

1.33    Interest.  Any right, claim, or entitlement arising out of or against an Equity Interest.

1.34    James River Equipment.  James River Equipment, Inc., assignee of John Deere.

1.35    James River Retained Collateral.    That equipment on which James River Equipment claims a lien as assignee of John Deere, consisting of a 2013 S680 Combine, a 2014 8370R Tractor, a 2014 4940 Self-Propelled Sprayer, a 2013 612 12-Row Corn Head, and a 2013 Unverferth Cart.

1.36    John Deere.  Deere Credit, Inc. and/or Deere & Company or, as applicable, the assignee of the foregoing's' Claim against the Debtor/Bankruptcy Estate, James River Equipment.

1.37    Judgment.  A judgment that is no longer subject to appeal, certiorari proceeding or other proceeding for review or rehearing, and as to which no appeal, certiorari proceeding, or other proceeding for review or rehearing shall then be pending.

1.38    Liquidation Analysis.  The forecast in the appendix to the Plan that projects the distributions to creditors should this case be converted to Chapter 7 of the Bankruptcy Code.

1.39    Other Priority Claims.  Any Claim to the extent entitled to priority in payment under sections 507(a)(2) through 507(a)(7) of the Bankruptcy Code.

1.40    Northland.  Northland Capital Financial Services, LLC.

1.41    Person.  An individual, a corporation, a partnership, an association, a joint stock company, a joint venture, an estate, a trust, an unincorporated organization, or a government, governmental unit or any subdivision thereof or any other entity.

1.42    Petition Date.  June 23, 2020, the date the Chapter 11 Case was filed.

1.43    Plan.  This Plan of Reorganization, as it may be from time to time modified, amended or supplemented, together with any exhibits thereto.

1.44    Priority Non-Tax Claim.  Any Claim arising prior to the Petition Date entitled to priority in payment under Sections 507(a)(1)-(a)(7) of the Bankruptcy Code.

1.45    Priority Tax Claim.  Any Claim arising prior to the Petition Date entitled to priority in payment under section 507(a)(8) of the Bankruptcy Code.

1.46    Pro Rata Share.  As of any certain date, with respect to any Allowed Claim in any Class, the proportionate share that such Allowed Claim bears to the aggregate amount of all Claims, including Disputed Claims, in such Class.

1.47    Professional.  Any attorney, accountant, appraiser, auctioneer, or other professional person retained and employed by the Estate in the Chapter 11 Cases in accordance with sections 327 and/or 328 of the Bankruptcy Code.

1.48    Reorganized Debtor.  The Debtor, as reorganized and re-vested with all of the assets of the Estate pursuant to this Plan.

1.49    Schedules.  The Schedules of Assets and Liabilities, and any amendments thereto, filed by the Debtor in the Chapter 11 Cases under section 521 of the Bankruptcy Code.

1.50    Secured Claim.  A Claim to the extent of the value, of any interest in property of the Estate securing such Claim, as determined pursuant to section 506(a) or 1111(b) of the Bankruptcy Code.  To the extent that the value of such interest is less than the amount of the Claim which has the benefit of such security, such Claim is an Unsecured Deficiency Claim unless, in any such case, the class of which such Claim is a part makes a valid and timely election under section 1111(b) of the Bankruptcy Code to have such Claim treated as a Secured Claim to the extent allowed.

1.51    Taxes.  All income, franchise, excise, sales, use, employment, withholding, property, payroll, and other taxes, assessments, and governmental charges, together with any interest, penalties, additions to tax, fines, and similar amounts relating thereto, imposed or collected by any federal, state, local, or foreign governmental authority.

1.52    Trustee.  Michael T. Bowers, Esq., who was appointed in the Bankruptcy Case pursuant to section 1183 of the Bankruptcy Code.

1.53    _Unsecured Claim_.  A Claim not secured by a charge against or interest in property in which the Estate has an interest, including any Unsecured Deficiency Claim, and any Claim arising at any time under Bankruptcy Rule 3002(c)(3).

1.54    _Unsecured Deficiency Claim_.  A Claim by a Creditor arising out of the same transaction as a Secured Claim to the extent that the value, as determined by the Bankruptcy Court pursuant to section 506(a) of the Bankruptcy Code or by stipulation, of such Creditor's interest in property of the Estate securing such Claim is less than the amount of the Claim which has the benefit of such security as provided by section 506(a) of the Bankruptcy Code.

1.55    _Voting Deadline_.  The date set in an order of the Bankruptcy Court as the deadline for the return of Ballots accepting or rejecting the Plan.

1.56    _Other Definitions_.  Unless the context otherwise requires, any capitalized term used and not defined herein or elsewhere in this Plan but that is defined in the Bankruptcy Code or Bankruptcy Rules shall have the meaning set forth therein.  Wherever from the context it appears appropriate, each term stated in either of the singular or the plural shall include the singular and the plural, and pronouns stated in the masculine, feminine or neuter gender shall include the masculine, the feminine and the neuter.  The words "herein," "hereof," "hereto," "hereunder," and others of similar inference refer to this Plan as a whole and not to any particular article, section, subsection, or clause contained in this Plan.  The word "including" shall mean "including without limitation."

## ARTICLE 2
## PROVISIONS REGARDING ALLOWED ADMINISTRATIVE
## CLAIMS AND ALLOWED PRIORITY TAX CLAIMS

2.1    ***Administrative Claims and Priority Tax Claims are Not Classified in this Plan***.  Administrative Claims and Priority Tax Claims are not classified and are not entitled to vote to accept or reject the Plan.  The treatment of and consideration to be received by holders of Allowed Administrative Claims and Allowed Priority Tax Claims pursuant to this Article 2 of the Plan shall be in full and complete satisfaction, settlement, release, and discharge of such Claims.  The Debtor's obligations in respect of such Allowed Administrative and Priority Tax Claims shall be satisfied in accordance with the terms of this Plan.

2.2    ***Administrative Claims Bar Date***.  Unless otherwise ordered by the Bankruptcy Court, requests for payment of Administrative Claims, including all applications for final allowance of compensation and reimbursement of expenses of Professionals and the Trustee incurred before the Confirmation Date, must be filed and served no later than thirty (30) days after the Confirmation Date.  Any Person required to file and serve a request for payment of an Administrative Claim and who fails to timely file and serve such request, shall be forever barred, estopped, and enjoined from asserting such Claim or participating in distributions under the Plan on account thereof.  The Administrative Claims Bar Date shall not apply to fees and expenses of Professionals or the Trustee incurred after the Confirmation Date.

2.3    ***Treatment of Administrative Claims***.  Except as provided herein or to the extent the holder of an Allowed Administrative Claim agrees otherwise, each holder of an Allowed

Administrative Claim shall be paid, in respect of such Allowed Claim, the full amount thereof in Cash (or such other form as is agreed upon by any holder of an Allowed Administrative Claim) on (a) the Effective Date, (b) the date on which such Claim becomes an Allowed Claim, except that Allowed Administrative Claims arising in the ordinary course of business shall, if due at a later date pursuant to its terms, be paid when otherwise due, or (c) if allowed by section 1191(e), in four, equal, annual installments with the first payment due on the anniversary of the Effective Date of the Plan and each payment due each anniversary thereafter.

2.4     *Treatment of Priority Tax Claims*.  Each holder of an Allowed Priority Tax Claim shall be paid the Allowed Amount of its Allowed Priority Tax Claim, at the option of the Reorganized Debtor: (a) in full, in Cash, on the Effective Date or as soon as practicable thereafter; (b) upon such other terms as may be mutually agreed upon between such holder of an Allowed Priority Tax Claim and the Reorganized Debtor; or (c) in equal, annual Cash payments starting the year following the Effective Date, in an aggregate amount equal to such Allowed Priority Tax Claim, together with interest at such rate as required by Section 511 of the Bankruptcy Code or otherwise as required by Section 1129(a)(9)(C) or (D) of the Bankruptcy Code, such that the full amount of each Allowed Priority Tax Claim is paid in full within five (5) years from the Petition Date.

## ARTICLE 3
## CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS

3.1     *Class 1:  Allowed Secured Tax Claims*

3.1.1     *Classification.*

Class 1 consists of all Allowed Secured Tax Claims.

3.1.2     *Treatment.*

These Claims shall be treated as secured obligations of the Reorganized Debtor.  Each holder of an Allowed Secured Tax Claim shall be paid the Allowed Amount of its Allowed Secured Tax Claim, at the option of the Reorganized Debtor: (a) in full, in Cash, on the Effective Date or as soon as practicable thereafter; (b) upon such other terms as may be mutually agreed upon between such holder of an Allowed Secured Claim and the Reorganized Debtor; or (c) in equal, annual Cash payments starting the year following the Effective Date, in an aggregate amount equal to such Allowed Secured Tax Claim, together with interest at such rate as required by Section 511 of the Bankruptcy Code or otherwise as required by Section 1129(a)(9)(C) or (D) of the Bankruptcy Code, such that the full amount of each Allowed Secured Tax Claim is paid in full within five (5) years from the Petition Date.  Each holder of an Allowed Secured Tax claim shall retain its existing liens, which shall retain the same priority that existed on the Petition Date.

3.1.3   *Impairment and Voting*

Class 1 is impaired by the Plan. The holders of Class 1 Claims are entitled to vote to accept or reject the Plan.  For purposes of voting, each holder of a Secured Tax Claim shall be considered to be the sole member of a separate Class.

3.2      ***Class 2:  Allowed Secured Claim of James River Equipment***

       3.2.1          *Classification*

Class 2 consists of the Allowed Secured Claim of James River Equipment.

       3.2.2          *Treatment*

This Claim shall be treated as a secured obligation of the Reorganized Debtor in the principal amount of $575,000.00.  Payments on account of James River Equipment's Allowed Secured Claim shall begin on December 15, 2020 and shall be made in equal monthly installments of principal and interest due on the 15th of each month thereafter, with interest at 5.9% per annum, over 5 years with no prepayment penalty.  James River Equipment shall retain its lien with the priority thereof, as it existed on the Petition Date pursuant to §1129(b)(2)(A)(i)(I) of the Bankruptcy Code until this Allowed Class 2 Claim is satisfied as set forth in the Plan.

James River Equipment shall have an Allowed Unsecured Deficiency Claim resulting from bifurcation of its Claim in the amount of $512,764.45, which shall be treated in Class 6 of the Plan.

Should any of the James River Retained Collateral be sold, leased, or otherwise disposed of for less than the then outstanding balance of this Allowed Secured Claim, all proceeds of sale received by James River Equipment will reduce this Allowed Secured Claim but will not alleviate Debtor from its responsibility to pay up to the full amount of the Allowed Class 2 Claim.

Notwithstanding anything in the Plan or in the Order Confirming Plan to the contrary, the Debtor may surrender any of the James River Retained Collateral to James River Equipment for sale, lease, or other disposition, with proceeds applied to the Allowed Secured Claim.

James River Equipment shall be permitted to inspect the James River Retained Collateral upon reasonable request.  The Debtor shall maintain and insure the James River Retained Collateral consistent with any pre-petition agreements to do so.

Upon default by the Debtor of any required monthly payments, and upon Debtor's failure to cure the default within 10 days from the date due, James River Equipment may, notwithstanding anything in the Plan or in the Confirmation Order to the contrary, pursue all of its state law remedies including, without limitation, repossession and sale, lease, or other disposition of the James River Retained Collateral. On any non-payment default by the Debtor, upon Debtor's failure to cure any such default within 30 days from the date written notice is mailed by James River Equipment (or its counsel) to the Debtor's last known address, James

River Equipment may, notwithstanding anything in the Plan or in the Confirmation Order to the contrary, pursue all of its state law remedies including, without limitation, repossession and sale, lease, or other disposition of the James River Retained Collateral.

### 3.2.3 *Impairment and Voting*

Class 2 is impaired by the Plan. The holder of the Class 2 Claim is entitled to vote to accept or reject the Plan.

### 3.3 **Class 3:  Allowed Secured Claim of Northland**

### 3.3.1 *Classification*

Class 3 consists of the Allowed Secured Claim of Northland

### 3.3.2 *Treatment*

This Claim shall be treated as a secured obligation of the Reorganized Debtor in the principal amount of $29,500.  Payments on account of Northland's Allowed Secured Claim shall begin on December 15, 2020 and shall be made in equal quarterly installments of principal and interest due on the 15th of each March, June, September, and December thereafter, with interest at 3.75% per annum, over 5 years with no prepayment penalty.  Northland shall retain its lien with the priority thereof, as it existed on the Petition Date pursuant to §1129(b)(2)(A)(i)(I) of the Bankruptcy Code until this Allowed Class 3 Claim is satisfied as set forth in the Plan.  Northland shall have no Allowed Unsecured Deficiency Claim.

### 3.3.3 *Impairment and Voting*

Class 3 is impaired by the Plan. The holder of the Class 3 Claim is entitled to vote to accept or reject the Plan.

### 3.4 **Class 4:  Allowed Secured Claim of Wells Fargo Auto**

### 3.4.1 *Classification*

Class 3 consists of the Allowed Secured Claim of Wells Fargo Auto

### 3.4.2 *Treatment*

This Claim shall be treated as a secured obligation of the Reorganized Debtor in the principal amount of $3,933.94  Payments on account of Wells Fargo Auto's Allowed Secured Claim shall begin on December 15, 2020 and shall be made in equal quarterly installments of principal and interest due on the 15th of each March, June, September, and December thereafter, with interest at 3.75% per annum, over 5 years with no prepayment penalty.  Wells Fargo Auto shall retain its lien with the priority thereof, as it existed on the Petition Date pursuant to

§1129(b)(2)(A)(i)(I) of the Bankruptcy Code until this Allowed Class 4 Claim is satisfied as set forth in the Plan.  Wells Fargo Auto shall have no Allowed Unsecured Deficiency Claim.

### 3.4.3 *Impairment and Voting*

Class 4 is impaired by the Plan. The holder of the Class 3 Claim is entitled to vote to accept or reject the Plan.

### 3.5 **Class 5:  Allowed Secured Claim of Wells Fargo Financial Leasing**

### 3.5.1 *Classification*

Class 5 consists of the Allowed Secured Claim of Wells Fargo Financial Leasing

### 3.5.2 *Treatment*

This Claim shall be treated as a secured obligation of the Reorganized Debtor in the principal amount of $48,000.00  Payments on account of Wells Fargo Financial Leasing's Allowed Secured Claim shall begin on December 15, 2020 and shall be made in equal quarterly installments of principal and interest due on the 15th of each March, June, September, and December thereafter, with interest at 3.75% per annum, over 5 years with no prepayment penalty.  Wells Fargo Financial Leasing shall retain its lien with the priority thereof, as it existed on the Petition Date pursuant to §1129(b)(2)(A)(i)(I) of the Bankruptcy Code until this Allowed Class 5 Claim is satisfied as set forth in the Plan.  Wells Fargo Financial Leasing shall have no Allowed Unsecured Deficiency Claim.

### 3.5.3 *Impairment and Voting*

Class 5 is impaired by the Plan. The holder of the Class 5 Claim is entitled to vote to accept or reject the Plan.

### 3.6 **Class 6:  General Unsecured Claims**

### 3.6.1 *Classification*

Class 6 consists of the Allowed General Unsecured Claims of all holders of General Unsecured Creditors except Debra Simpson, Mike Simpson, Cameron Simpson, and Simpson Family Farms.

### 3.6.2 *Treatment*

These Claims shall be treated as unsecured obligations of the Reorganized Debtor.  Each holder of an Allowed Class 6 Claim will receive a Pro Rata share of the Debtor's actual "disposable income" (as defined by section 1191(d) of the Bankruptcy Code) for the years ending in 2021, 2022, and 2023 with payments being made on or before June 30 of 2022, 2023, and 2024.

### 3.6.3 *Impairment and Voting*

Class 6 is impaired by the Plan. The holders of Class 6 Claims are entitled to vote to accept or reject the Plan.

**3.7    Class 7:    General Unsecured Claims of Debra Simpson, Mike Simpson, Cameron Simpson, and Simpson Family Farms**

### 3.7.1 *Classification*

Class 7 consists of consists of General Unsecured Claims of Debra Simpson, Mike Simpson, Cameron Simpson, and Simpson Family Farms.

### 3.7.2 *Treatment*

All Allowed General Unsecured Claims of Debra Simpson, Mike Simpson, Cameron Simpson, and Simpson Family Farms shall be disallowed.

### 3.7.3 *Impairment and Voting*

Class 7 is impaired by the Plan. The holders of Class 7 Claims are entitled to vote to accept or reject the Plan to the extent permitted by applicable law.

**3.8    Class 8:  Equity Interests in the Debtor**

### 3.8.1 *Classification*

Class 8 consists of consists of the Equity Interests in the Debtor.

### 3.8.2 *Treatment*

All Equity Interests held prior to the Petition Date shall be retained.

### 3.8.3 *Impairment and Voting*

Class 8 is not impaired by the Plan.

## ARTICLE 4
## ACCEPTANCE OR REJECTION OF THE PLAN

**4.1    Impaired Classes Vote.**  Each holder of a Claim or Interest in an impaired Class receiving or retaining anything under this Plan is entitled to vote to accept or reject this Plan to the extent and in the manner provided in the Plan, the Bankruptcy Code and the Bankruptcy Rules, or in any voting procedures order.

4.2    ***Acceptance by Classes of Claims.***    This Plan shall qualify for confirmation pursuant to Sections 1191(a) and 1129(a)(8) as a consensual plan should no holder of an Allowed Claim vote to reject the Plan.

4.3    ***Designation of Classes Entitled to Vote.***    Holders of Claims and Interests in those Classes which are impaired are entitled to vote on the Plan.

4.4    ***Nonconsensual Confirmation.***    With respect to any Impaired Class, including any Class of Claims or Interests created pursuant to amendments or modifications to this Plan, that does not accept the Plan, the Debtor will request that the Bankruptcy Court confirm this Plan by Cramdown with respect to any such non-accepting Class or Classes at the Confirmation Hearing, *and the filing of this Plan shall constitute a motion for such relief*.

## ARTICLE 5
## EXECUTORY CONTRACTS AND UNEXPIRED LEASES

5.1    ***Assumption/Rejection.***

Through this Plan, the Debtor hereby assumes the following unexpired leases and executory contracts:

| Any and all insurance policies |
| --- |

Any executory contract or unexpired lease assumed pursuant to the Plan shall be fully enforceable by the Reorganized Debtor in accordance with the terms thereof, and shall include all written modifications, amendments, and supplements of said executory contract or unexpired lease and, as with respect to executory contracts or unexpired leases that relate to real property, shall include all written agreements and leases appurtenant to the premises, including easements, licenses, permits, rights, privileges, immunities, options, rights of first refusal, powers, uses, reciprocal easements, and any other interests in real property or rights *in rem* related to such premises.

Notwithstanding the forgoing, the Debtor may move to assume any unexpired lease or executory contract at any point on or before the Confirmation Date.

All payments, including all cure payments, adequate assurance or compensation for actual pecuniary loss, that are due or required to be paid or provided by Sections 365(b)(1)(A)-(C) of the Bankruptcy Code (collectively the "Cure Payments") for any executory contract or unexpired lease that is being assumed under the Plan, unless disputed by the Debtor, shall be made by the Reorganized Debtor within 180 days of the Effective Date.  The Debtor hereby gives notice that, except as set forth in the Plan, there are no Cure Payments due with respect to any executory contracts and unexpired leases to be assumed under the Plan.  Any non-debtor party to any executory contract or unexpired lease to be assumed under the Plan that objects to assumption of the executory contract or unexpired lease or believes that a Cure Payment is due in connection with such assumption must file a written objection to the assumption of such

executory contract or unexpired lease with no Cure Payment and state in the written objection the grounds for such objection and specifically set forth the amount of any request for a Cure Payment by the deadline established by the Bankruptcy Court for filing objections to confirmation of the Plan.

Unless the non-debtor party to any executory contract or unexpired lease to be assumed files and serves on the Debtor and its counsel an objection to assumption of such executory contract or unexpired lease for any reason, or asserting that a Cure Payment is required or owed in connection with such assumption, by the deadline established by the Bankruptcy Court for filing objections to confirmation of the Plan, then the executory contracts and unexpired leases shall be assumed, and any default then existing in the executory contract and/or unexpired lease shall be deemed cured as of the Confirmation Date, and there shall be no other cure obligation or Cure Payment due or owed by anyone, including the Debtor and the Reorganized Debtor, in connection with such assumption of the executory contract or unexpired lease unless otherwise set forth in this Plan. Any Claims for Cure Payments not Filed as part of a written objection to the proposed assumption within such time period will be forever barred from assertion against the Debtor, its Estate, the Reorganized Debtor, and its assets, and the holders of any such Claims are barred from recovering any distributions under the Plan on account thereof unless provided otherwise in this Plan. In the event of an objection to the assumption of executory contracts or unexpired leases regarding the amount of any Cure Payment, or the ability of the Reorganized Debtor to provide adequate assurance of future performance or any other matter pertaining to assumption, (a) the Bankruptcy Court will hear and determine such dispute at the Confirmation Hearing, and (b) in the discretion of the Debtor, the Debtor (i) may assume such disputed executory contract or unexpired lease by curing any default or providing adequate assurance in the manner determined by the Bankruptcy Court, or (ii) the Debtor may reject the executory contract or unexpired lease.  The Reorganized Debtor shall have ten (10) Business Days after any order determining the amount of a disputed Cure Payment in which to reject of such executory contract or unexpired lease and, in such an event, such executory contract or unexpired lease shall be deemed rejected.

Each executory contract or unexpired lease of the Debtor that has not expired by its own terms before the Effective Date, assumed by this Plan, or previously been assumed by the Debtor in Possession pursuant to an order of the Bankruptcy Court, or that is the subject of a pending motion to assume as of the Confirmation Date, shall be deemed rejected by the Debtor as of the Petition Date pursuant to sections 365 and 1123 of the Bankruptcy Code.

5.2  ***Effect of Confirmation Order on Executory Contracts and Unexpired Leases.*** Entry of the Confirmation Order shall constitute an order of the Bankruptcy Court approving the rejection of all executory contracts and unexpired leases which have not been previously assumed by the Debtor pursuant to an order of the Bankruptcy Court or that are not the subject of a pending motion to assume as of the Confirmation Date.  Any such rejection shall be effective as of the day before the Petition Date, and all executory contracts and unexpired leases so rejected shall be conclusively deemed burdensome to and not in the best interest of the Estate.

5.3  ***Bar Date for Filing Proofs of Claim Relating to Executory Contracts and Unexpired Leases Rejected Pursuant to the Plan.***  Any Claims for damages arising from

rejection of an executory contract or unexpired lease under this Plan must be filed no later than 14 days after the Confirmation Date or be forever barred and unenforceable against the Debtor and the Estate, and the holders of such Claims shall receive no distributions under the Plan.

## ARTICLE 6
## DISTRIBUTIONS UNDER THE PLAN

6.1 **Distributions Under the Plan.** The Reorganized Debtor or any distribution agent the Reorganized Debtor may retain shall make all distributions to the holders of Allowed Claims and Allowed Interests that are required under this Plan. If any litigation now pending is resolved by Final Order or settlement, and the Debtor is ordered to pay any sums to the successful litigant, then such party shall become a creditor, and shall share in distributions to the appropriate Class. Whenever any distribution to be made under this Plan shall be due on a day other than a Business Day, such distribution shall instead be made, without the accrual of any interest, on the immediately succeeding Business Day, but shall be deemed to have been made on the date due.  To the extent this Plan is confirmed pursuant to Section 1191(b), this Plan invokes Section 1194(b) such that the Reorganized Debtor, and not the Trustee, shall have the obligation to make payments to holders of Allowed Claims.

6.2 **Delivery of Distributions.** Distributions to a holder of an Allowed Claim or Allowed Interest shall be made at the address of such holder as indicated on the Debtor's records. In the event that any such distribution is returned as undeliverable, the Reorganized Debtor shall use reasonable efforts to determine the current address of the applicable holder, and no distribution to such holder shall be made unless and until the Reorganized Debtor has determined such then current address, provided, however, that if any distribution remains unclaimed after the first anniversary after distribution, such distribution shall be deemed unclaimed property pursuant to Section 347(b) of the Bankruptcy Code and shall become vested in the Reorganized Debtor.  In such event, the Claim of the holder for such distribution shall no longer be deemed to be Allowed, and such holder shall be deemed to have waived its rights to such distribution under this Plan pursuant to Section 1143 of the Bankruptcy Code, shall have no further claim or right thereto, and shall not participate in any further distributions under this Plan with respect to such Claim. Checks issued by the Reorganized Debtor in respect of Allowed Claims shall be null and void if not negotiated within ninety (90) days after the date of issuance thereof.

6.3 **Third-Party Agreements.** Distributions to Creditors hereunder will not affect the right of any Entity to levy, garnish, attach, or employ other legal process with respect to such distributions. All subordination agreements entered into by any parties in interest shall be enforceable to the extent permitted by applicable law, and all distributions and payments made pursuant to the Plan shall be subject to applicable law.

6.4 **Manner of Payment Under the Plan.** At the option of the Reorganized Debtor, any payment to be made under the Plan may be made by check or wire transfer from a domestic bank or as otherwise required by applicable agreement.

6.5     ***No Fractional Distributions.*** For purposes of distributions, Cash distributions may be rounded up or down, as applicable, to the nearest whole dollar.

## ARTICLE 7
## MEANS FOR IMPLEMENTATION AND EXECUTION OF THE PLAN

7.1     ***Sources of Funding.*** The Plan contemplates that distributions will be funded by revenues generated during the Debtor's post-petition operations, the Reorganized Debtor's future revenue, and the payment of the Back Lease Payments.

7.2     ***Authority to Act Following Confirmation Date.*** Upon confirmation of this Plan, the Debtor shall be authorized to take all necessary steps, and perform all necessary acts, to consummate the terms and conditions of this Plan including, without limitation, the execution and filing of all documents required or contemplated by this Plan. In connection with the occurrence of the Effective Date, the Reorganized Debtor is authorized to execute, deliver, or record such contracts, instruments, releases, indentures, and other agreements or documents, and take such actions as may be necessary or appropriate to effectuate and further evidence the terms and conditions of this Plan.

7.3     ***Authority to Act Following Effective Date.*** The Reorganized Debtor shall be authorized to execute, deliver, file, or record such contracts, instruments, articles, releases, indentures, and other agreements or documents and to take such actions as may be necessary or appropriate to effectuate and further evidence the terms and conditions of this Plan and any notes or securities issued pursuant to this Plan.

7.4     ***Status of Liens of Secured Tax Claims and Other Lien Claimants.*** Unless otherwise provided in this Plan or by Order of the Bankruptcy Court, on the Effective Date, all existing liens held by any Class or Classes on the Debtor's assets shall retain the same priority that existed on the Petition Date, provided that such liens shall not extend to property acquired by the Debtor after commencement of the Chapter 11 Cases as set forth in section 552 of the Bankruptcy Code. Section 552 of the Bankruptcy Code shall continue to apply to all such liens and security interests following confirmation of the Plan. All other liens and encumbrances not specifically provided for in the Plan shall be deemed automatically canceled, terminated and of no further force or effect without further act or action under any applicable agreement, law, regulation, order, or rule. Post-confirmation, the Reorganized Debtor is permitted to liquidate any assets subject to a lien as provided herein. Any creditor holding such a lien shall release the same immediately upon its receipt of the proceeds of such sale up to the full amount of its Allowed Secured Claim related to the asset sold.

7.5     ***Effectuating Documents and Further Transactions.*** The Debtor and the Reorganized Debtor shall be authorized to execute, deliver, file, or record such contracts, instruments, releases, articles, and other agreements or documents and to take such actions as may be necessary or appropriate, for and on behalf of the Debtor and the Reorganized Debtor, to effectuate and further evidence the terms and conditions of this Plan and any notes or securities issued pursuant to this Plan.

## ARTICLE 8
## RESOLUTION OF DISPUTED CLAIMS AND INTERESTS

8.1    ***Objections to Claims and Interests; Prosecution of Disputed Claims and Interests.***    The Debtor and, after the Effective Date, the Reorganized Debtor, shall have the exclusive right to object to the allowance, amount or classification of Claims and Interests asserted in the Chapter 11 Case, and such objections may be litigated to Final Order by the Debtor or Reorganized Debtor, as applicable, or compromised and settled in accordance with the business judgment of the Debtor or Reorganized Debtor, as applicable, without further order of the Bankruptcy Court. Unless otherwise provided herein or ordered by the Bankruptcy Court, all objections to Claims and Interests shall be filed no later than one year after the Effective Date, subject to any extensions granted pursuant to a further order of the Bankruptcy Court, which extensions may be obtained by the Reorganized Debtor upon *ex parte* motion.

8.2    ***Estimation of Disputed Claims and Interests.***    The Debtor and, after the Effective Date, the Reorganized Debtor, may at any time request that the Bankruptcy Court estimate for all purposes, including distributions under this Plan, any Disputed, contingent or unliquidated Claim or Interest pursuant to Section 502(c) of the Bankruptcy Code whether or not the Debtor or the Reorganized Debtor have previously objected to such Claim or Interest. The Bankruptcy Court shall retain jurisdiction to estimate any such Claim or Interest at any time, including, without limitation, during the pendency of an appeal relating to such objection.

8.3    ***No Distribution on Account of Disputed Claims and Interests.*** Notwithstanding anything else contained in this Plan, except with respect to any undisputed, non-contingent and liquidated portion of General Unsecured Claims, no distribution shall be due or made with respect to all or any portion of any Disputed, contingent, or unliquidated Claim until the Claim becomes an Allowed Claim by Final Order.

## ARTICLE 9
## EFFECT OF CONFIRMATION OF PLAN

9.1    ***Vesting of Assets and Retained Causes of Action.***    On the Confirmation Date, pursuant to § 1141(b) of the Bankruptcy Code, all assets of the Debtor and Debtor in Possession shall vest in the Reorganized Debtor free and clear of any and all Claims, Liens, Interests, and other interests, charges and encumbrances, except as otherwise expressly provided in this Plan or in the Confirmation Order.  From and after the Confirmation Date, the Reorganized Debtor may operate its business and may own, use, acquire and dispose of its assets free of any restrictions of the Bankruptcy Code or the Bankruptcy Rules and in all respects as if the Chapter 11 Case had never been filed.  Except as otherwise specifically provided in this Plan, the Reorganized Debtor shall retain all rights and is authorized to commence and pursue, as it deems appropriate, any and all claims and causes of action, including, but not limited to Avoidance Actions, whether arising before or after the Petition Date, in any court or other tribunal including, without limitation, in an adversary proceeding filed in the Chapter 11 Case, and including but not limited to, the claims and causes of action specified in the Plan.

9.2     **_Binding Effect._** Subject to the occurrence of the Effective Date as set forth in Article 10 of the Plan, on and after the occurrence of the Confirmation Date, the provisions of this Plan shall bind any holder of a Claim against, or an Interest in, the Debtor and such holder's successors and assigns, whether or not such holder's Claim or Interest is impaired under the Plan, whether or not such holder has accepted the Plan, and whether or not such holder is entitled to a distribution under the Plan.

9.3     **_Discharge of the Debtor._** Except as otherwise provided in this Plan or the Confirmation Order, and to the fullest extent permitted by Sections 1141, 1181(c), and 1192 of the Bankruptcy Code, the rights afforded in this Plan and the treatment of Claims and Interests herein shall be in exchange for and in complete satisfaction, discharge, and release of all Claims against and Interests in the Debtor, the Debtor in Possession, the Reorganized Debtor or the assets, interests in, or property of the Debtor, the Debtor in Possession or the Reorganized Debtor of any nature whatsoever, including any Interest accrued on any Claim from and after the Petition Date. Except as expressly otherwise provided herein or in the Confirmation Order, all Claims arising before the Effective Date (including those arising under Sections 502(g), 502(h) or 502(i) of the Bankruptcy Code) against the Debtor and the Debtor in Possession (including any based on acts or omissions that constituted or may have constituted ordinary or gross negligence or reckless, willful, or wanton misconduct of any of the Debtor's officers, directors, employees, or agents, or any conduct for which the Debtor may be deemed to have strict liability under any applicable law), and all Interests shall be irrevocably satisfied, discharged, cancelled and released in full.

For the avoidance of doubt, the Reorganized Debtor shall be responsible only for (a) those payments and Distributions expressly provided for or due under this Plan and (b) Claims and Interests that are not canceled and discharged pursuant to specific and express provisions of this Plan, and then only to the extent and in the manner specifically and expressly provided in this Plan. All Entities are precluded and forever barred from asserting against the Debtor, the Debtor in Possession, or the Reorganized Debtor, or the assets, properties, or Interests in or property of the Debtor, the Debtor in Possession, or the Reorganized Debtor of any nature whatsoever, any Claims or Interests based upon any act or omission, transaction, or other activity, event, or occurrence of any kind or nature that occurred prior to the Effective Date, whether or not the facts of or legal bases there for were known or existed prior to the Effective Date, except for (a) those payments and distributions expressly due under this Plan and (b) Claims and Interests, if any, that are not canceled and discharged under the Plan, but instead survive pursuant to specific and express provisions of this Plan.

Except as expressly provided in this Plan, nothing herein shall be construed to affect the liability of any other person or entity for a debt that is discharged as to the Debtor, the Debtor in Possession, and/or the Reorganized Debtor.

9.4     **_Indemnification Obligations._** Subject to the occurrence of the Effective Date as set forth in Article 10 of this Plan, the obligations of either the Debtor to indemnify, reimburse or limit liability of any person who is serving or has served as one of its directors, officers, employees or agents by reason of such person's prior or current service in such capacity as provided in the applicable articles of organization, operating agreements, partnership

agreements, or bylaws, by statutory law or by written agreement, policies or procedures of or with the applicable company, shall be deemed to be and treated as executory contracts that are assumed by the Debtor and assigned to the Reorganized Debtor pursuant to the Plan and section 365 of the Bankruptcy Code and shall not be affected by or discharged by this Plan. Nothing in the Plan shall be deemed to affect any rights of any director or officer or any other person against any insurer with respect to any directors or officers liability insurance policies.

9.5    **Term of Certain Injunctions.** Unless otherwise provided herein or in the Confirmation Order, all injunctions and/or stays provided for in, or in connection with, this Chapter 11 Case, whether pursuant to the provisions of the Bankruptcy Code or other applicable law, in existence on the Confirmation Date, shall remain in full force and effect through the Effective Date and thereafter if so provided by this Plan, the Confirmation Order, or by their own terms; *provided that* any holder of an Allowed Secured Claim whose collateral is surrendered to it pursuant to the terms of this Plan, or, any holder of an Allowed Secured Claim whose collateral is retained by the Reorganized Debtor pursuant to the terms of this Plan but with respect to which there is a post-confirmation default by the Reorganized Debtor in its obligations hereunder, shall not be enjoined nor prohibited from exercising its *in rem* rights as to such collateral under applicable state law following occurrence of the Effective Date upon thirty-days' written notice to the Reorganized Debtor of its intent to do so. In addition, on and after the Confirmation Date, the Debtor may seek such further orders as it deems necessary or appropriate to preserve the *status quo* during the time between the Confirmation Date and the Effective Date.

9.6    **No Successor Liability.** Except as otherwise stated in the Plan or Confirmation Order, neither the Debtor nor the Reorganized Debtor will have any responsibilities for any liabilities or obligations of the Debtor or any of the Debtor's past or present subsidiaries relating to or arising out of the operations of or assets of the Debtor or any of the Debtor's past or present subsidiaries, whether arising prior to, or resulting from actions, events, or circumstances occurring or existing at any time prior to the Effective Date. The Reorganized Debtor shall have no successor or transferee liability of any kind or character, for any Claims; provided, however*, that the Reorganized Debtor shall have the obligations for the payments specifically and expressly provided, and solely in the manner stated, in this Plan.

9.7    **Preservation of Claims Not Settled or Released.** Without limiting any other provisions of this Plan, unless a Claim or cause of action against a Creditor or other Entity is expressly and specifically waived, released, compromised or settled in this Plan or any Final Order, the Reorganized Debtor reserves the same for pursuit by the Reorganized Debtor after the Effective Date.  No preclusion doctrine, including, without limitation, res judicata, collateral estoppel, issue preclusion, claim preclusion, waiver, estoppel (judicial, equitable or otherwise) or laches shall apply to such claims or causes of action upon or after the Confirmation Date or the Effective Date of the Plan.  The Reorganized Debtor reserves the right to pursue or adopt any claims (and any defenses), causes of action, or objections of the Debtor or Debtor in Possession as trustee for or on behalf of its Creditors, not specifically waived, released, compromised or settled in this Plan or any Final Order against any Entity, including, without limitation, the plaintiffs or codefendants in any lawsuits. The Reorganized Debtor shall be a representative of the Estate appointed for the purposes of pursuing any and all such claims and Causes of Action under 11 U.S.C. § 1123(b)(3)(B).

Any Entity to whom the Debtor has incurred an obligation (on account of services, purchase or sale of goods, tort, breach of contract or otherwise), or who has received services or otherwise transacted business with the Debtor in any capacity should assume that such obligation, transfer, or other transaction may be reviewed by the Reorganized Debtor subsequent to the Effective Date and may, to the extent not theretofore specifically waived, relinquished, released, compromised or settled in this Plan or any Final Order, be the subject of an action, claim, demand, or objection after the Effective Date, whether or not (a) such Entity has filed a proof of claim against the Debtor in the Chapter 11 Case, (b) such Entity's proof of claim has been objected to, (c) such Entity's Claim was included in the Debtor's Schedules, or (d) such Entity's scheduled Claim has been objected to by the Debtor or has been identified by the Debtor as disputed, contingent, or unliquidated.

## ARTICLE 10
## THE EFFECTIVE DATE OF THE PLAN

10.1    ***Conditions to Occurrence of Effective Date of Plan.*** The "effective date of the plan," as used in Section 1129 of the Bankruptcy Code, shall not occur until the Effective Date as defined herein. The Effective Date shall occur upon satisfaction of the following conditions precedent (or conditions subsequent with respect to actions that are to be taken contemporaneously with, or immediately upon, the occurrence of the Effective Date) on or before December 1, 2020:

10.1.1 The Confirmation Order shall have been entered by the Bankruptcy Court.

10.1.2    All actions, agreements and instruments, or other documents necessary to implement the terms and provisions of the Plan, if any, shall have been executed and delivered by any applicable non-debtor parties in form and substance satisfactory to the Debtor.

10.1.3    All fees and expenses due to or incurred by Professionals for the Debtor through the Effective Date not previously paid pursuant to interim or Final Orders shall have been paid into and shall be held in trust, free and clear of Liens, Claims and encumbrances (other than the rights of such Professionals) until due and payable in accordance with applicable court order.

10.2    ***Revocation of Confirmation Order or Withdrawal of Plan.*** The Debtor may revoke or withdraw the Plan prior to the Confirmation Date by filing a Notice of Withdrawal of Plan in the record of the Chapter 11 Case. If the Plan is withdrawn prior to the Confirmation Date or if the Effective Date does not occur as set forth in Article 10, then the Plan shall be deemed withdrawn and the Confirmation Order (if any has been entered) shall be automatically revoked without the need for any action by any party in interest or the Bankruptcy Court. In such event, the Plan and the Confirmation Order shall be of no further force or effect and, the Debtor and all holders of Claims and Interests shall be restored to the *status quo ante* as of the day immediately preceding the filing of the Plan, and (ii) all the Debtor's respective obligations with respect to the Claims and Interests shall remain unchanged, all of the Debtor's rights and claims against all Entities shall be fully preserved and nothing contained herein shall be deemed to constitute an admission or statement against interest or to constitute a waiver or release of any

claims by or against the Debtor or any other persons or to prejudice in any manner the rights of the Debtor or any person in any further proceedings involving the Debtor or any other persons.

## ARTICLE 11
## MISCELLANEOUS PROVISIONS

11.1 ***Payment of Statutory Fees.*** All fees payable pursuant to Section 1930 of title 28 of the United States Code shall be paid by the Reorganized Debtor, as, when and in the amount as required by applicable law.  The Bankruptcy Administrator shall not be obligated to file an application authorizing the payment of all such fees.  No such fees are owed or will be owed by the Reorganized Debtor.

11.2 ***Notice.*** Any notice required or permitted to be provided to the Debtor or Reorganized Debtor under the Plan shall be in writing and served by either (a) certified mail, return receipt requested, postage prepaid, (b) hand delivery, or (c) reputable overnight courier service, freight prepaid, to be addressed as follows:

> Moon Wright & Houston, PLLC.
> c/o Richard S. Wright
> 121 West Trade Street, Suite 1950
> Charlotte, North Carolina 28202

11.3 ***Headings.*** The headings used in this Plan are inserted for convenience only and do not in any manner affect the construction of the provisions of this Plan.

11.4 ***Governing Law***. Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules), the laws of the State of North Carolina, without giving effect to any conflicts of law principles thereof that would result in the application of the laws of any other jurisdiction, shall govern the construction of this Plan and any agreements, documents, and instruments executed in connection with this Plan, except as otherwise expressly provided in such instruments, agreements, or documents.

11.5 ***Additional Documents.*** The Debtor has the authority to take any and all actions and execute (and perform) any agreements and documents as the Debtor deems necessary or appropriate in their reasonable discretion to effectuate and further evidence the terms and conditions of this Plan.

11.6 ***Compliance with Tax Requirements.*** In connection with this Plan, the Debtor and the Reorganized Debtor will comply with all applicable withholding and reporting requirements imposed by federal, state, and local taxing authorities, and all distributions hereunder shall be subject to such withholding and reporting requirements.

11.7 ***Exemption from Transfer Taxes.*** Pursuant to § 1146(a) of the Bankruptcy Code, to the extent applicable, the issuance, transfer, or exchange of any securities under this Plan, the making or delivery of any mortgage, deed of trust, other security interest, or other instrument of transfer under, in furtherance of, or in connection with this Plan, shall be exempt from all taxes as provided in such section of the Bankruptcy Code.

11.8 **_Further Authorizations._** The Debtor, and after the Effective Date, the Reorganized Debtor, may seek such orders, judgments, injunctions, and rulings they deem necessary or useful to carry out the intention and purpose of, and to give full effect to, the provisions of this Plan.

11.9 **_Successors and Assigns._** The rights, benefits and obligations of any Entity named or referred to in this Plan shall be binding on, and shall inure to the benefit of, any heir, executor, administrator, personal representative, successor or assign of such Entity.

11.10 **_Modification and Amendment of the Plan._** Subject to the restrictions in section 1127 of the Bankruptcy Code and Bankruptcy Rules 2002 and 3019, this Plan may be amended or modified by the Debtor, and, after the Effective Date, by the Reorganized Debtor.

11.11 **_Termination of Trustee._** The Trustee shall be terminated upon the Reorganized Debtor's confirmation that the Plan has been substantially consummated by filing a notice of substantial consummation on the docket in the Bankruptcy Case.

11.12 **_506(b), (c) Claims._** No party shall be entitled to fees, expenses, or compensation pursuant to Section 506(b) or (c) of the Bankruptcy Code.

11.13 **_Remedies._**

Upon default by the Debtor of any required payments for an allowed Secured Claim set forth in Article 3, and upon Debtor's failure to cure the default within 30 days from the date written notice of default is mailed to the Debtor's last known address, the holder of the Allowed Secured Claim for which payment is in default may, notwithstanding anything in the Plan or in the Order Confirming Plan to the contrary, pursue all of its state law remedies including, without limitation, repossession and sale, lease, or other disposition of its collateral.

Except as otherwise provided in the Plan, and as required by Section 1191(c)(3)(B), the exclusive remedy for breach of the Plan shall be to bring an action to enforce the Plan.

## ARTICLE 12
## RETENTION OF JURISDICTION

Pursuant to §§ 105(a) and 1142 of the Bankruptcy Code, the Bankruptcy Court shall retain and have jurisdiction to the fullest extent provided by applicable law over any matter arising under the Bankruptcy Code or arising in or related to the Chapter 11 Case or this Plan, including, without limitation, the following:

12.1 **_Executory Contracts and Unexpired Leases._** To hear and determine any and all motions or applications (i) for the assumption, assumption and assignment or rejection of executory contracts or unexpired leases to which the Debtor is a party or with respect to which the Debtor may be liable, (ii) to review and determine all Cure Payments under any such

assumed executory contract or unexpired lease, and (iii) to review and determine any Claims resulting from the rejection of any executory contract or unexpired lease.

12.2   ***Causes of Action.*** To determine any and all Causes of Action, including all adversary proceedings, applications, motions, and contested or litigated matters that may be pending on the Effective Date or that, pursuant to this Plan, may be instituted by the Reorganized Debtor after the Effective Date.

12.3   ***Disputed Claims, Contingent Claims and Unliquidated Claims Allowance/Disallowance.*** To hear and determine any objections to the allowance of Claims or Interests (other than Claims that are Allowed pursuant to the Plan or by prior, Final Order of the Bankruptcy Court), including but not limited to any objections to the classification of any Claim, and to allow or disallow any contingent Claim, Disputed Claim, unliquidated Claim, contingent Interest, disputed Interest in whole or in part, and to determine any and all disputes among Creditors and holders of Interests with respect to their Claims and Interests.

12.4   ***Enforcement/Modification of Plan.***

12.4.1 To hear and determine any requests to modify this Plan, remedy any defect or omission, or reconcile any inconsistency in any order of the Bankruptcy Court, including the Confirmation Order.

12.4.2 To hear and determine all controversies, suits, and disputes that may relate to, impact upon, or arise in connection with this Plan or any other Plan documents or their interpretation, implementation, enforcement, or consummation.

12.4.3 To hear and determine other matters that may be set forth in the Plan and Confirmation Order or that relate to any transaction required or contemplated by the Plan.

12.4.4 To hear and determine any other matters related hereto, including matters related to the implementation and enforcement of the Plan, the Confirmation Order, and all orders entered by the Bankruptcy Court in the Chapter 11 Case.

12.4.5 To hear and determine any issue relating to distributions under the Plan.

12.4.6 To enter such orders as are necessary to implement and enforce the injunctions described herein, including orders extending the protections afforded under Section 105 of the Bankruptcy Code.

12.4.7 To issue such orders in aid of execution of this Plan to the fullest extent authorized or contemplated by Section 1142 of the Bankruptcy Code.

12.5   ***Compensation of Professionals.*** To hear and determine all applications for allowance of compensation and reimbursement of expenses of Professionals, any other fees and expenses authorized to be paid or reimbursed under this Plan (whether pursuant to order of the Court, agreement, or otherwise), and to approve the reasonableness of any payments made or to

be made as provided in Section 1129(a)(4) of the Bankruptcy Code.  To the extent not fully paid on the Effective Date, the Reorganized Debtor (and/or its assigns) is permitted and authorized to reimburse Professionals in installments.

       12.6    **Settlements.**  To the extent that Bankruptcy Court approval is required, to consider and act on any compromise and settlement of any Claim against or Cause of Action by the Debtor or the Reorganized Debtor.

       12.7    **Taxes.**  To hear and determine matters concerning state, local, and federal taxes, fines, penalties, or additions to taxes for which the Debtor or Debtor in Possession may be liable, directly or indirectly.

       12.8    **Specific Purposes.**  To hear and determine such other matters as may be provided for in the Confirmation Order or may be appropriate under applicable law.

       12.9    **Final Decree.**  To enter an order or final decree closing the Chapter 11 Case.

Dated: Charlotte, North Carolina
       September 21, 2020

                   Respectfully submitted,

                   **MT SIMPSON FARM, LLC**

By:       */s/ Cameron Simpson*
                   Cameron Simpson, Member

                   **MOON WRIGHT & HOUSTON, PLLC**
By:

                   */s/ Richard S. Wright*
                   Richard S. Wright (Bar No. 24622)
                   121 West Trade Street, Suite 1950
                   Charlotte, North Carolina 28202
                   Telephone:  (704) 944-6560
                   *Counsel for the Debtor*

Appendix:  Financial Projections

|  | 2020 - Q4 | 2021 | 2022 | 2023 |
|---|---|---|---|---|
| Rental Income | 62,000 | 305,000 | 305,000 | 305,000 |
| Back Rent Payments | 5,000 | 5,000 | 5,000 | 5,000 |
| **Gross Revenue** | **67,000** | **310,000** | **310,000** | **310,000** |
|  |  |  |  |  |
|  |  |  |  |  |
| Insurance | (3,333) | (20,000) | (20,000) | (20,000) |
| Maintenance | (21,667) | (130,000) | (130,000) | (130,000) |
| **Cash Available for Secured Debt Service** | **42,000** | **160,000** | **160,000** | **160,000** |
|  |  |  |  |  |
| **Payments to Secured Creditors** |  |  |  |  |
| John Deere | (11,090) | (133,076) | (133,076) | (133,076) |
| Wells - Equipment | (2,643) | (10,573) | (10,573) | (10,573) |
| Wells - Auto | (217) | (867) | (867) | (867) |
| Northland | (1,624) | (6,498) | (6,498) | (6,498) |
| **Cash Available for Administrative Expenses** | **26,426** | **8,987** | **8,987** | **8,987** |
|  |  |  |  |  |
| Chapter 11 Administrative Expenses | (25,000) | 0 | 0 | 0 |
| **Cash Available for Priority Creditors** | **1,426** | **8,987** | **8,987** | **8,987** |
|  |  |  |  |  |
| Internal Revenue Service | (1,206) | 0 | 0 | 0 |
|  |  |  |  |  |
| ***Cash Available for Unsecured Creditors*** | ***Not Applicable*** | ***9,207*** | ***8,987*** | ***8,987*** |

Appendix: Liquidation Analysis

| | |
|---|---:|
| Liquidation Value of Unencumbered Personal Property | 67,305.13 |
| Cash | 324.74 |
| Liquidation Value of Encumbered Personal Property Less Liens | 25,915.06 |
| Liquidation Value of Notes/AR | 0.00 |
| **Total Realizeable Assets** | **93,544.93** |
| Less Liquidation Costs (Trustee Commission and Brokerage Fees) | -28,697.26 |
| Less Chapter 7 administrative fees | -40,000.00 |
| Less Chapter 11 administrative fees | -25,000.00 |
| **Total Administrative Claims** | **93,697.26** |
| **Net Available for Priority Unsecured** | **0.00** |
| Less Priority Claims | -1,205.75 |
| **Net Available for General Unsecured Creditors in Chapter 7** | **0.00** |
| **Available for General Unsecured Creditors under Plan** | **27,180.99** |
| | |
| **Percent of General Unsecured Claims Paid in Chapter 7** | 0% |
| **Percent of Noninsider General Unsecured Claims Paid Under Plan** | 5% |